IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| OCCUMED HEALTH SPECIALIST, LLC PLAINTIFF <br><br> V. <br><br> FABRICA DE PALETAS DE PUERTO RICO INC.; PALETAS DE PUERTO RICO INC.; PALETTAMERICA PR LLC, FELIX PEÑA-FERNANDEZ; PATRICIA PEÑA-RODRIGUEZ; ADRIEL PEÑA-RODRIGUEZ; ADRIAN PEÑA-RODRIGUEZ; CORPORACIÓN SAID, S.A.; INSURANCE COMPANY ABC, AND DEF; JOHN DOE, JIM DOE, JANE DOE AND SUE DOE <br><br> DEFENDANTS | CIVIL NO.: 25-CV-1274 <br><br> VIOLATION OF THE RACKEETER INFLUENCED AND CORRUPT ORGANIZATION ACT; BREACH OF CONTRACT; UNJUST ENRICHMENT; FAILURE TO COMPLAY WITH IMPLIED COVENANT OF GOOD FAITH, FRAUD; AND TORT DAMAGES <br><br> PLAIINTIFF DEMANDS TRIAL BY JURY |

## **COMPLAINT**

TO THE HONORABLE COURT:

COMES NOW, the plaintiff, through its undersigned attorneys, and very respectfully states, alleges and prays:

### I.     NATURE OF ACTION

1.1     This is an action for violation of the Racketeer, Influenced and Corrupt Organization Act; for breach of contract, for unjust enrichment, for failure to comply with the implied covenant of good faith, fraud, and tort damages.

1.2     The primary cause of action of this case is a criminal enterprise engaged in a pattern of racketeering activity, involving numerous RICO predicate acts during the past two (2) calendar years.

1.3    The RICO predicates alleged here cluster around wire fraud and money laundering which in turn are directly related to further criminal conduct.

1.4    The Plaintiff requests from this Honorable Court compensation for its economic losses, including but not limited to the loss of over $400,000 which was paid by the Plaintiff to the RICO Defendants and the Defendants on account of the fraud scheme devised by them.

## II.    VENUE AND JURISDICTION

2.1    Jurisdiction is conferred upon this Court by Title 28 U.S.C.A. § 1331 pursuant to this Honorable Court's federal question jurisdiction, insofar as plaintiff's claims against the RICO defendants arise under the Racketeer Influenced and Corrupt and Organization Act ("R.I.C.O."), particularly 18 U.S.C.A. §1962 (a)-(d), in its civil context pursuant to 18 U.S.C.A. §1964(c).

2.2    Supplemental Jurisdiction is also conferred by Title 28 U.S.C.A. §1367, insofar as all Puerto Rico law claims presented herein against the defendants who form part of the corrupt enterprise are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Pursuant to 28 U.S.C.A. § 1367, a federal court may exercise supplemental jurisdiction over a state law claim when it is joined with a federal claim and both arise from a common nucleus of operative fact, as alleged herein.

2.3    Venue properly lies in this district since the claims and all of the operative facts occurred within the Commonwealth of Puerto Rico.

2.4    Pursuant to the Seventh Amendment to the United States Constitution, plaintiffs demand trial by jury as to all counts presented in the instant complaint.

### III.    THE PARTIES

3.1     Plaintiff Occumed Health Specialist LLC (hereinafter "Occumed") is a limited liability corporation registered and authorized to do business in the Commonwealth of Puerto Rico with its main office located in San Juan, Puerto Rico.

3.2     RICO Defendant Felix Peña-Fernández (hereinafter "Felix Peña") is a convicted fraudster, who also faced allegation of money laundering filed before this Honorable Court.  *See, United States v. Felix Peña-Fernández, 18-426*.  Felix Peña was charged by a Grand Jury in an 18 counts indictment with fraudulently obtaining more than 3.5 million dollars from Banco Popular and other financial institutions.  He was also charged with money laundering.  Felix Peña plead guilty to thirteen counts of bank fraud on August 24, 2023, and was subsequently sentenced to a two (2) year imprisonment term in December 2023.  At present Felix Peña is detained at MDC Guaynabo.

3.3     RICO Defendant Patricia Peña-Rodríguez (hereinafter "Patricia") is the daughter of Mr. Peña-Fernández, of legal age and resident of Dorado, Puerto Rico. Patricia was instrumental to further the scheme to defraud and RICO conspiracy by appearing in legal documents to shield the identity of her father from banks and other entities as her father faced the criminal charges detailed above.

3.4     RICO Defendant Adriel Peña-Rodríguez (hereinafter "Adriel") is the son of Mr. Peña-Fernández, of legal age and resident of Dorado, Puerto Rico.  Adriel was instrumental to further the scheme to defraud and RICO conspiracy by appearing in legal documents to shield the identity of his father from banks and other entities as his father faced the criminal charges detailed above.  Furthermore, Adriel Peña-Fernández to

further advanced the scheme to defraud the Plaintiffs and to hide the proceeds of the fraud created and formed a new limited liability company named Palettamerica PR LLC on February 12, 2025.

3.5    RICO Defendant Adrian Peña-Rodríguez (hereinafter Adrian) is the son of Mr. Peña-Fernández, of legal age and resident of Dorado, Puerto Rico.  Adrian was instrumental to further the scheme to defraud and continue the RICO conspiracy by appearing in legal documents to shield the identity of his father from banks and other entities as his father faced the criminal charges detailed above.

3.6    All of the aforementioned RICO Defendants[1] participated in the creation of the RICO Enterprise Defendants and used and abused such corporate entities to further the frauds and RICO conspiracy alleged in this case.

3.7    The first RICO Enterprise Defendant is Paletas de Puerto Rico Inc., (hereinafter "Paletas PR") a for-profit corporation created and organized under the laws of the Commonwealth of Puerto Rico with its principal place of business and main offices located in Dorado, Puerto Rico.  Paletas PR was incorporated on September 16, 2020, by the sons and daughter of convicted fraudster Felix Peña.  While his sons and daughter appear on the corporate records as the incorporators of Paletas PR, corporate documents show that Felix Peña was the only officer of said entity.

3.8    The second RICO Enterprise Defendant is Fabrica de Paletas de Puerto Rico, Inc. (hereinafter "Fabrica") is a for-profit corporation created and organized under the laws of the Commonwealth of Puerto Rico with its principal place of business and

---

[1] For ease of reference all the RICO Defendants are also referred to in this Complaint as the Peña Family Defendants or Peña Defendants.  The son and daughter of Mr. Felix Peña are jointly referred to as the Peña Siblings Defendants.

main offices located in Bayamón, Puerto Rico.  Fabrica was incorporated on April 15, 2021, by the sons and daughter of convicted fraudster Felix Peña.

3.9    The third RICO Enterprise Defendant is Palettamerica PR, LLC ("Palettamerica") is a for-profit corporation created and organized under the laws of the Commonwealth of Puerto Rico with its principal place of business and main offices located in Bayamon, Puerto Rico.  Palettamerica, was incorporated on February 12, 2025, by the son (Adriel E. Peña Rodriguez) of convicted fraudster Felix Peña.

3.10    Fabrica, Paletas PR, and Palettamerica are the RICO Enterprise Defendants. They were created by Defendant Felix Peña, using his sons and daughter, codefendants Patricia Peña, Adriel Peña and Adrian Peña. When Mr. Felix Peña was convicted, he used the corporate entities and his sons and daughter as a shield to cover the true ownership and control of such entities before Puerto Rico banks and to enable them to extract over $400,000 of moneys from Occumed for the personal use and benefit of the RICO Defendants.

3.11    Corporación SAID, S.A. a mercantile society registered in the Republic of Panamá and owned by Bassam El Eyssami Askul a Venezuelan national that resides in Panamá City, Panamá. Its address is Calle 59 Este Plaza Downtown Obarr Local 13 Ciudad Panama, Panamá.

3.12    Codefendants John Doe and Jim Doe were at all times and acted in all matters complained hereafter as other defendants that may be liable to plaintiff for their actions in this case. All unknown named defendants will be substituted and served process as soon as their names are known.

3.13    Codefendants Jane Doe and Sue Doe are the wife of unknown named codefendants and as such are liable for their actions and/or omissions. The legal partnership constituted by them, are also liable to plaintiff for the actions and omissions of their spouses.  All unknown named defendants will be substituted and served process as soon as their names are known.

3.14    Codefendants Corporation 1 and LLC 2 are corporations and/or LLC registered to do business in Puerto Rico or elsewhere, including but not limited to the Republic of Panama that may be liable to plaintiff for their actions in this case. All unknown named corporate defendants will be substituted and served process as soon as their names are known.

3.15    Codefendants Insurance Company ABC and DEF are the insurance company for the corporate defendants and/or the individual defendants, who issued insurance coverage for the actions described in the complaint for which such insurance company is jointly and/or independently liable for the events described in the complaint.

## IV.    GENERAL FACTS

### A.    General Background

4.1    Plaintiff Occumed is a Puerto Rico corporation created to provide medical services and specialized services related to Occupational Health and Safety to patients in the Commonwealth of Puerto Rico.

4.2    RICO Enterprise Fabrica and Paleta PR are corporate entities created by the RICO Defendants to facilitate the manufacturing, franchise and retail business of gelato and gourmet flavored popsicles in Puerto Rico.

4.3    The RICO Defendants own and control the RICO Enterprise in this case and are the persons who profited from the scheme to defraud, and RICO conspiracy enabled by them through Fabrica and Paleta PR.

4.4    Although corporate records suggest that the sons and daughter of RICO Defendant Felix Peña are the rightful owners and hold controlling interests in both RICO Enterprise Defendants, in practice, the enterprises were operated under Mr. Peña's control. Mr. Peña used the names and identities of his children to create the appearance that they owned and operated Fabrica, Palettamerica, and Paleta PR, while in reality, he made most, if not all, material financial decisions. His children, also named as RICO Defendants, implemented those decisions and knowingly permitted Mr. Peña to use their identities to further the fraudulent scheme.

4.5    Pursuant to the allegation set forth, Felix Peña-Fernández, Patricia Peña-Rodríguez, Adriel Peña-Rodríguez, Adrian Peña-Rodríguez, Paletas de Puerto Rico, Inc., Fábrica de Paletas de Puerto Rico, Inc., and Palettamerica PR, LLC are all co-conspirators in a scheme to defraud Occumed.

4.6    They jointly conspired to defraud Occumed by way controlling and corrupting several corporations and corporate entities, the RICO Enterprise Defendants, by committing multiple acts of wire fraud and money laundering to enrich themselves.

**B.    The Scheme to Defraud is Born**

4.7    On around June 2024, Felix Peña approached Doctor Wilfredo Aviles ("Dr. Aviles"), who was and is the President and owner of Occumed to "invest" in what he described as a superb business opportunity related to his developing frozen popsicle business.    Mr. Peña explained to Dr. Aviles that he had secured certain retail

arrangements and was in the process of securing other retail agreements with a supermarket chain and Walmart to sell Paleta PR's products throughout Puerto Rico.

4.8     Mr. Peña explained that Paleta PR was the exclusive franchisor for PalettAmerica a brand of frozen popsicles owned by Corporación SAID, S.A. a mercantile society registered in the Republic of Panamá and owned by Bassam El Eyssami Askul a Venezuelan national that resides in Panamá City, Panamá.

4.9     Mr. Peña further explained to Dr. Aviles that while he had established a manufacturing operation for Paleta PR in Bayamón, Puerto Rico, the operation was too small to sustain the expected increase of sale resulting from the inclusion of Sterling Merchandising Company (an ice cream distributor in Puerto Rico, who channels products to Puerto Rico supermarkets including Supermax, Walmart and Walgreens, among others) to its distribution and sale network.

4.10     He also informed Dr. Aviles that Paleta PR and/or Fabrica had secured several sub-franchise agreements in Puerto Rico.  This sub-franchise entities were required to purchase all the products it sold from Paleta PR and/or Fabrica.

4.11     Mr. Peña offered Occumed to repay all moneys invested or loaned to him and his corporate entities on account of a 15% interest rate of return.

4.12     Dr. Aviles, on behalf of Occumed, lured by Mr. Peña's promises and the fact that his son, Wilfredo Aviles Jr. had studied with one of Mr. Peña's sons, and having known him from residing in the same residential complex in Dorado, accepted Mr. Peña's invitation to invest in Paleta PR and Fabrica.

4.13     The manner and means for the scheme to defraud Occumed entailed Mr. Peña providing Dr. Aviles a series of documents that presumably showed the urgent need

for capital related to purchases of materials for the manufacturing of popsicles. Mr. Peña claimed that he had made significant orders for prime materials for the manufacturing of the popsicles and that Fabrica and/or Paletas PR needed an urgent infusion of cash to cover such purchases.  Mr. Peña claimed that with the increased manufacturing a corresponding increase in income would occur, and that he would commence to repay Occumed in a few months with interest.

4.14    On June 11, 2024, Occumed made the first "investment" providing a $35,000.00 check in the name of "Fabrica de Paletas de Puerto Rico".  Ten days later, on June 21, 2024, Occumed made a second check for $10,000 for "Fabrica de Paletas de Puerto Rico". But on that same day, Mr. Felix Peña requested that another check for the same amount be made to his name.  That second check was also issued by Occumed and cashed by Mr. Peña.

4.15    Mr. Peña justified the issuance of this additional check in his name by claiming he needed to cash it the same day to cover urgent factory expenses, including employee wages and the purchase of equipment.

4.16    A couple of weeks later, Mr. Peña again contacted Doctor Aviles to ask him to advance him more moneys.  He claimed again that he needed to urgently pay for some materials and some wages.  He asked Dr. Aviles to make the check payable to "cash" to allow it to be cashed without requiring his presence and to expedite the process.

4.17    Unbeknownst to Dr. Aviles in June 2024, Mr. Peña was a convicted fraudster, who was engaged in a subsequent litigation related to several attempts to forfeit his property.  Thus, Dr. Aviles was unaware that the real reason for Mr. Peña to ask for check payments to be made in favor of "cash" was to launder the proceeds of such

payments, hiding the income from local tax authorities and using such moneys for his own personal needs without any accounting that could point to him owning any property or receiving income.

4.18   Upon information and belief, Mr. Peña was required, as a condition of his conviction, and while pending sentence, to keep his probation officer informed of any changes to his financial circumstances. Accordingly, he had an additional motive to receive funds in cash in order to conceal his income and true net worth from the probation officer.

4.19   As part of his scheme to defraud and to further obtain moneys from Occumed, on July 16, 2024, while using the wires, Mr. Peña sent a communication to Dr. Aviles where he confirmed a telephone conversation they had that day where Mr. Peña agreed to amend the investment agreement.   Under this amendment the investment agreement was amended to convert Occumed to a 50% owner of the commercial effort. Mr. Peña advises in the communication that he would create a new corporation on August 1, 2024, with new accounts.

4.20   The "amendment" was used by Mr. Peña as bait to cause Dr. Aviles to allow Occumed to continue investing money with him.  That same day Mr. Peña requested a $10,000.00 check payable in "cash".

4.21   The requests for checks made payable to "cash" did not end there. Two days later, on July 18, 2024, Mr. Peña asked Dr. Aviles for another such check in the amount of $9,900.00.

4.22   A day later, on July 19, 2024, Mr. Peña asked for two separate checks payable to cash in the amount of $10,000.00 each.

4.23   After these two (2) checks in the amount of $10,000.00, Mr. Peña explained to Dr. Aviles that he had trouble cashing the checks due to the amount and requested that from thereon checks be made payable to "cash" in an amount lower than $10,000.00.

4.24   Accordingly, pursuant to specific requests and instructions from Mr. Peña, Occumed thereafter issued the following checks:

1. 8/02/24 Check payable in cash for $9,900.00

2. 8/02/24 Check payable in cash for $9,900.00[2]

3. 8/09/24 Check payable in cash for $9,900.00

4. 8/09/24 Check payable in cash for $9,900.00

5. 8/09/24 Check payable in cash for $9,900.00[3]

6. 8/19/24 Check payable in cash for $9,900.00

7. 8/19/24 Check payable in cash for $9,900.00[4]

8. 8/23/24 Check payable to Fabrica for $42,000.00

9. 8/30/24 Check payable in cash for $9,900.00

10. 8/30/24 Check payable in cash for $9,900.00

11. 8/30/24 Check payable in cash for $9,900.00[5]

12. 9/06/24 Check payable in cash for $9,000.00

13. 9/06/24 Check payable in cash for $9,000.00

14. 9/06/24 Check payable in cash for $9,000.00

---

[2] Two (2) checks in the same amount were issued on this same date. Checks #12177 and 12178.
[3] Three (3) checks in the same amount were issued on this same date. Checks # 12180, 12181 and 12182.
[4] Two (2) checks in the same amount were issued on this same date. Checks #12187 and 12188
[5] Three (3) checks in the same amount were issued on this same date. Checks # 12198, 12199 and 12200.

15. 9/06/24 Check payable in cash for $9,000.00[6]

16. 9/13/24 Check payable in cash for $9,000.00

17. 9/13/24 Check payable in cash for $9,000.00[7]

18. 9/16/24 Check payable in cash for $9,000.00

19. 9/23/24 Check payable in cash for $9,000.00

20. 9/23/24 Check payable in cash for $9,000.00

21. 9/23/24 Check payable in cash for $9,000.00[8]

22. 9/23/24 Check payable to Steven Suarez for $2,489.00

23. 9/27/24 Check payable in cash for $9,000.00

24. 9/27/24 Check payable in cash for $9,000.00[9]

25. 9/27/24 Check payable to Fabrica for $18,000.00

26. 10/03/24 Check payable in cash for $9,000.00

27. 10/03/24 Check payable in cash for $9,000.00[10]

27. 10/04/24 Check payable in cash for $9,000.00

28. 10/11/24 Check payable in cash for $9,000.00

29. 10/11/24 Check payable to Fabrica for $11,000.00

4.25    Also, on November 25, 2024, Mr. Peña asked Dr. Aviles for another payment in cash, which he provided on behalf of Occumed in the amount of $14,000.00.

---

[6] Four (4) checks in the same amount were issued on this same date. Checks # 12203, 12204 and 12205 and 12206.
[7] Two (2) checks in the same amount were issued on this same date. Checks # 12216, 12217.
[8] Three (3) checks in the same amount were issued on this same date. Checks # 12222, 12223 and 12224.
[9] Two (2) checks in the same amount were issued on this same date. Checks # 12226 and 12235.
[10] Two (2) checks in the same amount were issued on this same date. Checks # 12242 and 12243.

4.26   All of the aforementioned checks and payments were requested by Mr. Peña using the wires by communicating by phone with Dr. Aviles to request the payments detailed herein.

4.27   Furthermore, Mr. Peña structured the payments requested from Occumed and Dr. Aviles in a manner designed to evade cash reporting requirements. He deliberately avoided legal thresholds, fully aware of the implications, having been previously charged with money laundering just two years earlier.

4.28   The obtention of hundreds of thousands of dollars from Occumed by way of illegal and deceitful representations, made via the use of wires, jointly with the structuring of the payments in violation of federal anti-money laundering laws are sufficient RICO predicates to support a RICO claim.

4.29   By information and belief, it is alleged that the moneys that Occumed provided to Fabrica and/or Paletas PR, through the issuance of multiple checks payable in cash were never recorded as a loan, capital or otherwise within the accounting system kept by Fabrica and/or Paletas PR.  While other income—for example, from the sale or consignment of popsicles—was recorded, the funds received from Occumed were not.

4.30   By information and belief, it is alleged that the Defendants used the RICO Enterprise to defraud Occumed by providing allegedly supporting documents of expenses to be incurred by Fabrica and/or Paletas PR, when in fact such moneys have been used for the personal expenses of the RICO Defendants, including the payment of a luxury apartment where Mr. Peña resided in Hato Rey and for multiple travel and personal expenses for him and for the other RICO Defendants.

**C.  The RICO Defendants Further the Scheme**

4.31    As the scheme to defraud relied on Occumed continuing to provide substantial funds over a short period, Mr. Peña furthered the deception by asking Dr. Aviles to allow his son to attend meetings and begin working with Fabrica's accounting. The justification given for this arrangement was that Dr. Aviles and Occumed were 50% partners in the Fabrica venture, as stated in a WhatsApp message sent to Dr. Aviles in July 2024.

4.32    Mr. Peña's sons and daughter participated in the scheme to deceive by allowing themselves to appear as the directors of all RICO enterprise corporate entities. Furthermore, they allowed themselves to be presented to Wilfredo Aviles Jr. as the actual majority stockholders for both Paleta PR and Fabrica.  Ironically, when Mr. Aviles Jr. meet with the RICO Defendants, one of Mr. Peña's sons had to admit to him that they had little if no knowledge of financial matters, accounts due and accounts receivable pending to be collected by Fabrica and/or Paleta PR.  In fact, they all asked at multiple occasions that Mr. Aviles Jr. access the QuickBooks system to determine the accounts that were pending.

4.33    This access allowed Mr. Aviles Jr. to note that hundreds of thousands of dollars invested by Occumed were never registered in the accounting books, nor there was adequate evidence of how such moneys were actually used by Paleta PR and Fabrica.

4.34    In fact, Mr. Aviles Jr. could not find the trace of most of the moneys invested or how they were used by Paleta PR and Fabrica in the accounting records for both entities.

4.35    However, when Mr. Aviles Jr inquired about operations, he was shown that the operation was ongoing and that both Paleta PR and Fabrica had a growing business.

4.36    It now appears that the purpose of allowing Mr. Aviles Jr. to enter the Fabrica facilities and allowing him to look at QuickBooks was to further the fraud by making it appear that the operation was ongoing, that manufacturing was proceeding, materials were being received and that Fabrica had thousands of dollars in account receivables that now appear to be false.

4.37    On or around February 20, 2025, Mr. Peña was incarcerated.  With his incarceration the scheme to defraud, which depended on Mr. Peña's continued false representations to Dr. Aviles, was doomed.  Patricia, Adriel and Adrian Peña, however, swiftly moved to avoid any possible claim or collection from Occumed.

4.38    Well knowing that Mr. Peña had represented to Dr. Aviles that the newest machinery in operation at the Fabrica was paid with funds invested by Occumed, and that Mr. Peña had agreed for Occumed to be the 50% owner of the business venture, they moved swiftly to conceal the product of the scheme and avoid any claims by Occumed.

4.39    Upon their father's commitment to MDC Guaynabo, they suddenly conveyed the information of such detention to Mr. Aviles Jr. via the use of wires in several WhatsApp messages.  Adriel contacted Mr. Aviles Jr. and advised him that his father was incarcerated, that there was no money to operate, that they were "closing" down the "Fabrica".

4.40    Adriel Peña further requested from Mr. Aviles Jr. to sign a document that they prepared where he would have recognized that Adrian and Adriel Peña would be the sole President and Vice-President respectively, eliminating from the Board of Directors of

Fabrica, Mr. Aviles Jr. and Patricia Peña.  By WhatsApp, Adriel provided Mr. Aviles Jr. with a copy of this document with his signature and the signature of his brother Adrian and his sister Patricia dated January 3, 2025.   Mr. Aviles Jr. never signed the document.

4.41   Without disposing of the fact that the actual owner of Fabrica, Mr. Peña, had granted Occumed a 50% participation in Fabrica as partners, Adriel contacted a franchise owner and the owner of the PalettAmerica Franchise and agree to further advance the scheme to defraud Occumed by taking action to hide the proceeds of the scheme and to further deceive Occumed, Dr. Aviles and Mr. Aviles Jr.

4.42   In the continuation of the scheme Adriel Peña represented that Fabrica had ceased operating, that Fabrica had substantial debts with the owner of PalettAmerica (Corporación SAID, SA) (Bassam El Eyssami Askul) and that Corporación SAID acquired, in exchange of payments of amount allegedly owed, all assets owned by Fabrica and that Corporación SAID had immediately transferred such assets to a third party, John DOE and/or Corporation 1, in Puerto Rico to continue the manufacture of popsicles.

4.43   As per the false and deceiving allegations made by Adriel via phone and WhatsApp, he and his brothers had ceased all operations of Fabrica. However, it has come to the attention of Occumed that Adriel and potentially his brother and sister continue to be engaged in the distribution, sale and retail of popsicles manufactured in Puerto Rico with the same assets acquired via the significant investment made by Occumed.

4.44   Without informing the Plaintiffs, or Mr. Aviles Jr, Adriel Peña registered a new LLC on February 12, 2025. In its certification of incorporation under penalty of perjury

Adriel Peña informed the Puerto Rico State Department that the purpose of Palettamerica PR LLC was the manufacture of gelato popsicles, gelato, cookies and other deserts.

4.45   Upon information and belief, the Plaintiffs have learned that the RICO Defendants, particularly the sons and daughter of Mr. Peña, all RICO Defendants in this case, continue to operate, manufacture and sell PalettaAmerica products. Thus, furthering the scheme to deceive Occumed by depriving it not only of its investment, but also of its 50% equity stake in Paleta PR and Fabrica, who owned the equipment purchased with funds provided by Occumed.

4.46   By representing to Occumed and the Aviles family that his father incarceration had resulted in the closure of the operations of the corporate entities, while at the same time registering a new LLC on his name, Adriel Peña lied and advanced the fraud and RICO scheme against Occumed by hiding the proceeds of the scheme and the assets purchased as a result of the scheme to defraud.

4.47   The actions undertaken by Mr. Peña and the Peña Siblings should be understood to be part and parcel to the scheme to deceive and to the RICO Conspiracy as their actions furthered both the scheme, as well as the conspiracy.

## V.  OVERVIEW OF DEFENDANTS' PATTERN OF FRAUDULENT CONDUCT AND RACKETERRING ACTIVITY

### A.        <u>Introduction</u>.

5.1   Plaintiff brings this action under the Racketeering Influence and Corrupt Organization Act and other law against the named defendants. The basis of this action revolves around a scheme of fraudulent conduct that the conspiring defendants engaged in through various enterprises as a result of their acts taken in furtherance of the fraudulent scheme.

5.2    As a consequence of their enterprise and conspiratorial actions, as will be detailed, the RICO Defendant violated the RICO Act, both directly and through the corrupt enterprise violating numerous federal laws by falsely representing to Occumed and Dr. Aviles fundamental financial information relevant to the investment Mr. Peña requested via Fabrica.

5.3    Fabrica, Paleta PR and Mr. Peña fraudulently obtained over $400,000 because of the RICO conspiracy that included wire fraud and money laundering.  By defrauding Occumed, Fabrica and Paleta PR, the RICO Enterprise, were unjustly enriched, which in turn caused severe economic losses to Occumed. By transferring the assets and operations of Fabrica and Paleta PR to a third party under the control of the conspirators and/or to Palettamerica PR LLC the scheme was advanced and furthered.

5.4    Upon information and belief, it is alleged that the RICO Defendants all benefited from the funds illegally obtained from Occumed. With such moneys the RICO Defendants received payments from Fabrica and/or Paleta PR and allowed them to indulge in an expensive way of life that included the rent of a luxury apartment in Hato Rey, multiple travel to the continental United States and Europe and the purchase and payment of cars and other personal expenses.

5.5    By deceiving Occumed, the corrupted entities, were able to maintain the necessary cash flow to maintain operations while at the same time satisfying the needs of the luxury lifestyle enjoyed by the RICO Defendants.

5.6    The RICO defendants were able to corrupt the RICO Enterprise corporations as they held control, through the Board of Directors of each of the RICO

Enterprise corporations. Through their absolute control of the RICO Enterprise the RICO Defendants were able to distribute $411,389.00 received in cash or checks payable to cash to cover their needs. Likewise, with that control the RICO Defendants were able to enact and further the scheme to defraud to launder the proceeds, to conceal the products of the scheme and to hide and dispense of any physical assets possessed by Fabrica and/or Paleta PR.

5.7    Furthermore, thru Mr. Adriel E. Peña's absolute control of the newly created Palettamerica PR LLC he was able to expand, further and continue the scheme to defraud by illegally and fraudulently transferring the assets of Fabrica and/or Paleta PR and hiding the proceeds of the illegal scheme perpetrated against Occumed.

5.8    Each and every communication from Mr. Peña, on behalf of the corrupted RICO Enterprise corporations to ask Occumed to provide further payments caused the use of the wires to seek moneys to be used in the concurrent money laundering scheme. On the frequency previously outlined, the RICO Enterprises caused Occumed to issue payments, used Mr. Peña or the other RICO Defendants and/or employees or agents for the RICO Enterprise corporations to cash the same, incurring in conduct prohibited by federal laws and serving as RICO Predicates.

5.9    Further to the above, the multiple and continuous telephone and WhatsApp communications from Adriel Peña with Mr. Aviles Jr. were part of the scheme to hide from Occumed the true nature of the intentions of the RICO Defendants of fraudulently misusing the funds provided by Occumed, depriving Occumed of its 50% proprietary interest in Fabrica and Paleta PR, and their assets and of hiding the assets from

Occumed. Thus, completing the scheme to defraud without financial consequences to RICO Defendants and the RICO Enterprise.

5.10    It draws from the above, that the RICO Defendants used and corrupted for their illegal purposes Fabrica, Paletas PR, and Palettamerica PR LLC as the enterprise used to affect the fraudulent scheme described above. Pursuant to the allegations set forth above, Felix Peña-Fernández, Patricia Peña-Rodríguez, Adriel Peña-Rodríguez, Adrian Peña-Rodríguez, Paletas de Puerto Rico, Inc., Fábrica de Paletas de Puerto Rico, Inc., and Palettamerica PR, LLC are all co-conspirators in a scheme to defraud Occumed.

5.11    At all relevant times to this Complaint the co-conspirators, Felix Peña-Fernández, Patricia Peña-Rodríguez, Adriel Peña-Rodríguez, Adrian Peña-Rodríguez, Paletas de Puerto Rico, Inc., Fábrica de Paletas de Puerto Rico, Inc., and Palettamerica PR, LLC agreed to engage in a scheme to defraud Occumed by way of making false misrepresentations of the financial condition and needs of the RICO Enterprise; may requesting payments in a structured way and manner to evade federal reporting requirements and to hide the illicit use of the fraudulently acquired funds.

5.12    Furthermore, the named conspirators in this case, and in particular de Peña Siblings, once the incarceration of Mr. Felix Peña-Fernández was imminent agreed to further the scheme to defraud to include Corporación SAID, S.A. in an effort to hide the RICO Enterprise's assets and equipment.  The Conspirators devised a fraudulent story to attempt to justify the unlawful and fraudulent transfer of such assets to a third party, by falsely representing the closure of the business, while at the same time having Adriel Peña-Rodríguez create Palettamerica PR, LLC to continue the operations originally

handled by Paletas de Puerto Rico, Inc., Fábrica de Paletas de Puerto Rico, Inc., all in fraudulent effort to deceive Occumed.

## VI.  FIRST CAUSE OF ACTION
## (RICO ACT SECTIONS 1962(B)-(C) SOLELY AGAINST THE RICO DEFENDANT)

6.1    The allegations contained in all preceding paragraphs are realleged as if fully alleged herein.

6.2    Plaintiffs are persons within the meaning of 18 U.S.C. §1961(3).

6.3    The RICO Defendant, are also persons within the meaning of 18 U.S.C. §1961(3).

**A.**    **The RICO Enterprise**

6.4    The RICO Defendants are several individuals who corrupted a group of Puerto Rico corporations and controls the same for the common purpose of carrying out an ongoing criminal enterprise, as described in the Complaint.

6.5    Fabrica, Paleta PR and Palettamerica PR LLC are the enterprise, as that term is defined in 18 U.S.C. §1961(4) for the purpose defrauding the Plaintiff and thus causing damages to it as part of the racketeering scheme.  These corporations form an enterprise that engages in and whose activities affect, interstate and international commerce.

6.6    Interstate commerce is affected as Fabrica and/or Paleta PR imports goods from outside Puerto Rico, via the use of shipping carriers to manufacture gelato popsicles. Furthermore, it is alleged in good faith the machinery used for the production of the goods produced by Fabrica and sold by Paleta PR were in the interstate commerce and were shipped to Puerto Rico from the Continental United States to Puerto Rico. Likewise, by

information and belief it is alleged that Palettamerica PR, LLC also conducted business in interstate commerce by following and continuing the operations of Fabrica and/or Paleta PR and by selling goods imported from outside Puerto Rico or produced with materials imported to Puerto Rico.

6.7    The equipment used by Fabrica and/or Paleta PR and/or Palettamerica PR, LLC to manufacture gelato popsicles, were manufactured in China and Mexico and imported to the United States for subsequent deliver in Puerto Rico.

6.8.    The raw materials needed to manufacture the gelato popsicles, were purchased on the interstate business, with emphasis on products imported from Europe.

6.9 Fabrica and Paleta PR also planned to sell goods in the Continental United States and Dominican Republic as part of the representations made to Occumed.

6.10    The aforementioned establishes the required interstate and international commerce impacts related to this RICO action.

**B.    Pattern of Racketeering Activity:  Wire Fraud in violation of 18 U.S.C. § 1343**

6.6    As described above, the RICO defendants engaged in a scheme to defraud plaintiff in Puerto Rico.  The ultimate objective of the RICO defendants' scheme was to maintain and/or grow the amount of money available obtained purportedly for the operations of Fabrica and or Paleta PR but to be withdrawn by them from the corrupted enterprise corporations by way of the criminal activity described herein.

6.7    In furtherance of this scheme, the RICO defendants, through the corrupt enterprise, transmitted or caused to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures or sounds and caused matters or things to be sent or delivered by wire, including but not limited to, the following:

- False and misleading information to the plaintiff by falsely representing that it would use the investment funds to further Fabrica and Paleta PR business and by fraudulently conveying that Fabrica and/or Paleta PR would return the invested funds with interest when they knew such representations to be false;

- Fraudulent documents claiming that Occumed would become and be treated as a partner of 50% of the business when in fact such representation was false as the RICO Defendants had no intention of doing so and as the representation was only made to extract more moneys from Occumed, unjustly enriching the RICO Defendants who used the proceeds of the fraudulent scheme for their own needs;

- WhatsApp messages incorporating the aforementioned false and misleading statements between the RICO Defendants, while using the corrupted RICO enterprise name and information to further the scheme to defraud providing a false justification for the money requested from Occumed;

- WhatsApp and telephone communication with request for additional payments to be made by Occumed purportedly justified with request for capital for the corrupted RICO; and

- Further electronic communications by WhatsApp between the RICO defendants and the Plaintiff concerning the corrupted RICO enterprise as to issuance of checks in cash or cash payments for the purported use of the

corrupted enterprise defendants but actually to benefit the RICO defendants.

- Further electronic communications related to the alleged closure of the operations of Fabrica and Paleta PR to hide the assets product of the scheme to defraud.

- Further electronic communications to hide the plan to transfer the assets and operations of Fabrica and Paleta PR to a third corporate entity created by Adriel Peña to further the scheme to defraud by hiding the assets of Fabrica and Paleta PR from Occumed or to a third party that is under the control of the Conspirators in this case.

6.8    Pursuant to and in furtherance of the fraudulent scheme, the RICO Defendants, through the use of the corrupt enterprise, committed multiple acts of conduct intent on defrauding plaintiff, affecting interstate commerce, though, without limitation:

- Various interstate communications via email, wire and/or phone, supplying to the Plaintiff multiple communications containing false representations to entice the Plaintiff to invest additional sums with the corrupted RICO enterprise, to provide false allegation of ownership of the RICO enterprise corporations and to attempt to hide the proceeds and assets of the RICO enterprise when the principal RICO Defendant was incarcerated;

- Various interstate communications via email, wire and/or phone: fraudulently concealing to the Plaintiff the state of the corrupted RICO enterprises and the assets of such entities; and

- Various interstate communications via email, wire and/or phone with Dr. Aviles and Aviles Jr. to further the concealment portion of the conspiracy to defraud by providing false, incomplete and inaccurate information to them related to alleged closure of Fabrica, the end of its operations, the transfer of assets to third parties without their participation or consent and the creation of a new corporate entity to complete the disposition of assets obtained from the fraudulent scheme.

6.9    These numerous acts that took place continuously from May 2024 up to and including today which constitutes a clear pattern of racketeering activity pursuant to U.S.C.A. §1961(5).

6.10    The RICO defendants participated in the scheme knowingly, willfully, and with the specific intent to deceive and defraud the Plaintiff.

6.11    The RICO Defendants have directly or indirectly conducted and participated in the conduct of the enterprise affairs through a pattern of racketeering activity as described above in violation of 18 U.S.C. §1962(c).

6.12    The RICO Defendants are engaged and control the RICO enterprise whose activities affect interstate commerce, in violation of 18 U.S.C.A. §1962(b).  The RICO defendants have directly or indirectly acquired and maintained interest in and control of the RICO enterprise through the pattern of racketeering activity described above, again in violation of 18 U.S.C.A. §1962(b).

6.13    Specifically the RICO enterprise corporations were corrupted by the RICO defendant with the goal of facilitating access to hundreds of thousands of dollars in

fraudulent payments obtained from the Plaintiffs, including a significant amount to be derived from the fraudulent and racketeering conduct.

6.14    The RICO enterprise's false and misleading statements have been relied on by Plaintiff.  Further these false and misleading statements, as well as the actions undertaken by the RICO defendants have caused plaintiff considerable damage to its business and property in an amount not less than 500,000.00. However, pursuant to 18 U.S.C. §1964 threefold the damages against the RICO Defendant are requested.

## VII. SECOND CAUSE OF ACTION
### (RICO CONSPIRACY)

7.1    The allegations contained in all preceding paragraphs are realleged as if fully alleged herein.

7.2    The Defendants conspired among themselves within the meaning of 18 U.S.C. §1962(d) to establish, conduct, operate and manage the enterprise, directly or indirectly, by engaging in a "pattern of racketeering activity" within the meaning of such term as defined in 18 U.S.C. §1961(5) by the commission of multiple, repeated, and continuous "racketeering activities" within the meaning of such term as defined in 18 U.S.C. §1961 (1) by interstate wire fraud (18 U.S.C. §1343) and money laundering (18 U.S.C. §1956(a)(1)(B)(ii).

7.3    Defendants co-conspirators engaged in criminal activity by knowingly devising and executing a scheme to defraud and obtain money from Occumed by providing false and fraudulent information to Occumed's principals related to the operations of Fabrica, Paletas PR, and later to conceal the proceeds of the fraud and the assets improperly obtained by Fabrica, Paletas PR, by creating Palettamerica PR LLC as a vehicle to continue to defraud Occumed.

7.4    Furthermore, the Defendants co-conspirators engaged in criminal activity by knowingly devising and executing a scheme to illegally structure monetary transactions in violation of money laundering laws by entering into multiple financial transactions with a financial institution engaged in interstate commerce, involving the proceeds of their fraudulent scheme.  Defendants knew that the payments they structured from Occumed where the proceeds of their unlawful activity and that the transactions were purposefully structured in payments of less than $10,000 to avoid transaction reporting requirements under federal law.

7.5    Pursuant to the allegations set forth, Felix Peña-Fernández, Patricia Peña-Rodríguez, Adriel Peña-Rodríguez, Adrian Peña-Rodríguez, Paletas de Puerto Rico, Inc., Fábrica de Paletas de Puerto Rico, Inc., and Palettamerica PR, LLC are all co-conspirators in a scheme to defraud Occumed. As a result of Defendants' conspiracy and racketeering activities, Occumed has suffered substantial injury to "its business and property" 18 U.S.C. §1964(c) in an amount not less than 500,000.00. However, pursuant to 18 U.S.C. §1964 threefold the damages against the RICO Defendant are requested.

## VIII. SECOND CAUSE OF ACTION
### (BREACH OF CONTRACT AGAINST THE INDIVIDUAL AND CORPORATE DEFENDANTS)

8.1    The allegations contained in all preceding paragraphs are realleged as if fully alleged herein.

8.2    Notwithstanding the clear terms of the agreement between Occumed and Mr. Peña, Fabrica and/or Paleta PR, the latter agreed to a course of conduct by way of deceiving the Plaintiff with false financial representations, false offers of partnership and false investment terms to convince Occumed to issue payments to them in excess of

$400,000.00.  The Defendants did this well knowing that they never intended to repay Occumed any of the moneys it invested.

8.3    Likewise, Mr. Peña, Fabrica and/or Paleta PR, and the Peña siblings breached the representation and agreement made to Occumed that converted it to a 50% owner of all assets related to the gelato popsicles manufacturing operation.  Well knowing that Occumed was 50% owner of the operation, they, once Mr. Peña was incarcerated and without the authorization of Occumed proceeded to allegedly transfer the property jointly owned by Occumed to a third party.

8.4    By information and belief, it is further alleged that Mr. Peña, Fabrica and Paleta PR used the moneys provided by Occumed for the personal benefit of the RICO Defendants thus allowing them to incur in a lavish lifestyle during the past months that includes but is not limited to payment of a luxury apartment in Hato Rey, expensive cars and expensive trips outside of Puerto Rico.

8.5    The Defendants never intended to pay Occumed the interest or principal invested by Occumed with the RICO Enterprise Defendant, nor did they did pay any such amount.  The Defendants thus breach the financial agreement they reached with Occumed and owe Occumed, with interests over $500,000.00.  This debt continues to accrue interest and will increase until the principal and interests owed are satisfied.

## *XI.*    *THIRD CAUSE OF ACTION*
### (BREACH OF IMPLIED COVENANT OF GOOD FAITH)

9.1.    Plaintiff realleges as if fully set forth herein the allegations contained in all preceding paragraphs.

9.2.    Pursuant to the investment contract between Occumed, Mr. Peña, Fabrica and Paletas PR, as modified to include a 50% ownership right, the Puerto Rico Civil Code

and the Doctrine of the Implied Covenant of Good Faith, all Defendants had both a contractual and legal obligation to conduct themselves with good faith in all actions related to the execution of such contractual agreement with Occumed.

9.3.    Given the above, the Defendants not only had to comply with the contractual requirement that they pay certain amounts to Occumed, that they register a new corporation or allow Occumed to control 50% of the corporate entities, but also had the good faith obligation to promptly inform Occumed any situation that affected these contractual obligations.

9.4.    By materially breaching the contract with Occumed and by deceiving both Occumed, Doctor Aviles and Aviles Jr., with the material misrepresentations described heretofore the Defendants, acted with clear disregard and in violation of the implied covenant of good faith that exist in all contractual relationships in Puerto Rico.

9.5.    For such actions, the Defendants are both jointly liable to Occumed for all damages caused as a result of their violation of the implied covenant of good faith, including but not limited to the amounts that Occumed never recovered, the 50% interest in the corporations or a new corporation which was never implemented and the damages caused due to this fraudulent breach. These damages are estimated in an amount not less than $1,000,000.00.

## X. FOURTH CAUSE OF ACTION
### (CONTRACTUAL FRAUD – "DOLO")

10.1    Plaintiff realleges as if fully set forth herein the allegations contained in all preceding paragraphs.

10.2   For the aforementioned facts the conduct exhibited by all of the named Defendants constitute contractual fraud ("dolo") in the performance of the contract with Occumed.

10.3   Given the above, all named Defendants, are jointly responsible for the totality of all damages caused to Occumed as a result of their actions, irrespective if such damages were foreseeable or not. Such damages are estimated in not less than $1,000.000.00.

## XI. FIFTH CAUSE OF ACTION
### (UNJUST ENRICHMENT)

11.1   Plaintiff realleges as if fully set forth herein the allegations contained in all preceding paragraphs.

1111.2      As a direct result of their acts and omissions as previously described, the named Defendants, were able to obtain over $400,000.00 dollars from Occumed which they never intended to return but instead intended to steal from Occumed.

11.3   Pursuant to the unjust enrichment doctrine, Occumed has the right, in the alternative, a contractual claim does not proceed, to be compensated for all the moneys received illegally and unjustly by the Defendants. This claim is valued in an amount not less than $1,000,000.

## XII. SIXTH CAUSE OF ACTION
### (CORPORATE VEIL PIERCING DOCTRINE)

12.1   Plaintiff realleges as if fully set forth herein the allegations contained in all preceding paragraphs.

12.2   RICO Enterprise Defendants' corporate veil must be pierced inasmuch the above allegations show that their corporate form: (1) sanction a fraud; (2) promote an

injustice; (3) evade statutory obligations; (4) violate public policy; (5) result in inequity; and/or (6) cover up fraudulent or criminal activity. Furthermore, the above allegations show that there has been corporate misuse, to wit: (1) undercapitalization; (2) nonpayment of dividends; (3) failure to observe corporate formalities; (4) absence of corporate records; (5) commingling of funds; and/or (6) use of corporate funds for non-corporate purposes.

12.3    The aforementioned acts detailed in the Complaint shows that the RICO Enterprise Defendants were created to sanction a fraud and promoted a grave injustice against Occumed.

12.4    The allegations also establish that the corporate officers of the RICO Enterprise Defendants used such corporations to promote a fraud, evade money laundering laws and regulations and to coverup fraudulent and criminal activity.

12.5    The multiple request for cash payments, the way the Peña Defendants alternated the use of the RICO Enterprise Defendants and ended up creating a new LLC just moments after allegedly closing the operations of their prior corporate entities, shows that the RICO Enterprise Defendants operated in an irregular manner with clear undercapitalization, failed to observe corporate formalities, failed to maintain proper separate accounting of all funds and assets and basically commingled funds allowing the Peña Defendants to use corporate resources for their own benefit to the detriment of Occumed.

12.3    Pursuant to the above, Occumed requests the Court to disregard the corporate structures of the RICO Enterprise Defendants, Paleta PR, Fabrica and

Palettamerica, and to impose individual liability upon the individual defendants for all sums claimed in the relevant cause of actions.

### XIII. EIGHT CAUSE OF ACTION
### (SUPPLEMENTAL JURISDICTION)
### (PR Civil Code, Arts. 298-302)

13.1    Plaintiff realleges as if fully set forth herein the allegations contained in all preceding paragraphs.

13.2    Pursuant to 28 U.S.C.A. § 1367, a federal court may exercise supplemental jurisdiction over a state law claim when it is joined with a federal claim and both arise from a common nucleus of operative fact, as alleged herein.

13.3    As set forth above, without considering the fact that the actual owner of Fabrica, Mr. Peña, had granted Occumed a 50% participation in Paleta PR and/or Fabrica as partners, Adriel contacted a franchise owner and the owner of the PaletAmerica and agree to further advance the scheme to defraud Occumed by taking action to hide the proceeds of the scheme and to further deceive Occumed, Dr. Aviles and Mr. Aviles Jr.

13.4    In the continuation of the scheme Adriel Peña represented that Paleta PR and/or Fabrica had ceased operating, that Paleta PR and/or Fabrica had substantial debts with the owner of PaletAmerica, Corporación SAID, SA, (Bassam El Eyssami Askul) and that Corporación SAID acquired in exchange of payments of amount owed, all assets owned by Fabrica and that Corporación SAID had immediately transferred such assets to a third party, John DOE and/or Corporation 1, in Puerto Rico to continue the manufacture of popsicles.

13.5    Pursuant to the PR Civil Code, Articles 300-302, 31 PR Laws § 6231-35, Occumed requests that any such transaction between the RICO Defendants, RICO

Enterprise Defendants, and Corporación SAID and/or John Doe and Corporation 1 be declared null and void in furtherance of a scheme to defraud and to hide proceeds and equipment, which Occumed is legally entitled to.

### XIII. RELIEF

Wherefore, the Plaintiffs respectfully pray that this Honorable Court enter judgment providing the following relief:

1.    Award Plaintiff the economic and compensatory damages caused by Defendants.

2.    Award Plaintiff treble damages as required by RICO.

3.    Award Plaintiff the costs of the action, together with reasonable attorneys' fees; prejudgment interest and any other or further relief as the Court may deem appropriate and proper due to Defendants' obstinacy.

WE HEREBY CERTIFY: that on this same date we electronically filed the foregoing with the Clerk of the Court using the CM/CEF system, which will send notification of such filing to all counsel or record.

RESPECTFULLY SUBMITTED, in San Juan, Puerto Rico, on May 20, 2025.

*S/RAUL S. MARIANI FRANCO*
RAUL S. MARIANI FRANCO
USDC-PR NO.: 210309
P.O. BOX 9022864
SAN JUAN, PR 00902-2864
Tel.: (787) 620-0038/Fax: (787) 620-0039
rmariani@marianifranciolaw.com